## SUPREME COURT OF THE STATE OF FLORIDA,

AT

## MARCH TERM, 1857,

### HELD AT MARIANNA.

———•◄═►•———

7   329
e41   504

JOSEPH MITCHELL, APPELLANT, VS. JOHN G. MCLEAN, APPELLEE.

Where the owner of lumber sells it and indorses and delivers to the purchaser the receipt of the proprietor of the lumber yard in which it is deposited, this *symbolical* delivery is sufficient to pass the title, *as between the vendor and vendee;* whether the mere act of transfer from the vendor to the vendee will give the latter the right to proceed *at law* against the original bailee for the recovery of the property or its value—*Quere ?*

If the bailee, either expressly or impliedly signify his *assent* to the transfer, he makes himself the bailee of the purchaser, and there is thereby such a *privity* established between the parties as will be sufficient to sustain any action between them.

A *set-off* is in the nature of a *cross-action,* and to maintain it, the same principles must govern in the one as in the other.

Appepl from the Circuit Court of the Western Circuit.

The facts as presented in the bill of exceptions in this case appear in the opinion of the Court.

[The names of the Counsel in the case have not been furnished to the Reporter.]

DuPONT, J., delivered the opinion of the Court.

The facts of this case, as presented in the bill of excep-

42

tions, are as follows: John G. McLean, the plaintiff below, was the owner of a lumber yard, and entered into an agreement with certain owners of lumber that if they would deposit their rafts with him as their agent, he would take the lumber out of the water, tally, sell, deliver it, collect the money and pay it over to the respective owners after deducting ten per cent. commissions on the proceeds of the sales, and ten cents per thousand feet, as a yard tax, as a full compensation for his said services. The rafts were placed with him accordingly, and he executed and delivered to the respective owners, receipts for the same. While this lumber was in the yard of McLean, and under his control as the agent of the owners, they sold it to the appellant, Mitchell, and transferred the receipts to him, first having indorsed the same in blank. The evidence further shows that Mitchell was to be accountable for commissions and charges on all the lumber that should be delivered to him by McLean, and that he, McLean, promised to deliver the lumber to Mitchell. It further appeared in evidence that Mitchell was to pay Herrington & Co., the owners of one of the lots of lumber, for only so much as he should actually receive from the agent, McLean. Mitchell neglecting to pay the commissions and charges accruing upon the respective lots of lumber, McLean brought his action of assumpsit to recover the same, and in the bill of particulars accompanying the declaration, the amount of commissions and charges due upon the respective lots is distinctly set forth. To this action there were two defences set up—*non-assumpsit* and *set-off.* To the plea of set-off was appended an acount, amongst the items of which are charged for *deficiencies* in the amount of lumber contained in the several lots purchased by Mitchell from the original owners. The question presented for our adjudication, growing out of the rulings of the Court below, is as to the right of Mitchell to hold Mc-

Lean accountable for the whole amount of lumber mentioned in the respective receipts. In order to simplify the enquiry, we will consider whether, as the vendee of the lumber, there had been such a consummation of the sale as would pass the property, so that he might, upon that title, have maintained an action of trover or replevin for it ; for unless he could, he would have no right to avail himself of the deficiency in the amount actually delivered, as a matter of set-off.

To maintain trover or replevin the plaintiff must have the right to the immediate possession of the chattel. Now *as between the vendor and vendee,* there had been such a delivery of the lumber as entitled the latter to the immediate possession, and had he proceeded to appropriate it to his own use, he could not have been made liable in an action of trespass. It is true that there had been no actual delivery, by manucaption, but there had been as near an approach to an actual delivery as the nature of the property would admit of. There had been a contract of sale entered into between the vendor and vendee, accompanied by a transfer to the latter of the lumberman's receipt. This was a *symbolical* delivery, and is as effectual in law, where the nature of the property requires it, as an actual delivery.— Thus it is held, that if the goods be in a ware-house, the delivery of the *key* of the ware-house will be sufficient. Timber may be delivered by marking it with the initials of the assignee. (Williams on Personal Property, 34 Marginal.)

Upon this point Lord Kenyon has observed—"Where goods are ponderous and incapable of being handed over from one to another, there need not be an actual delivery, but it may be done by that which is tantamount, such as the delivery of the key of a ware-house in which the goods are lodged, or by delivery of other *indicia* of property." (Chitty on Cont. 396.)

Where goods were sold while they were in the possession of a bailee on storage, a delivery of the certificate of the bailee, acknowledging that he had the goods in his possession on storage, was considered as a sufficient delivery of the goods. Chapman vs. Searle, 3 Pick. R. 38. Plymouth Bank, vs. Bank of Norfolk, 10 Pick. 459.

Taking a bill of parcels and the order on the warehouseman, and paying the price, has been held to be a complete and executed contract, so as to pass the property and the risk of the articles sold. Pleasants vs. Pendleton, 6 Rand. R. 473.

In the case before us there was a delivery to the vendee of the lumberman's receipt, indorsed with the name of the owner and vendor ; and the objection alledged against this act being taken to be a sufficient delivery is, that the indorsement was *in blank*. Considering the nature of the business out of which this contract arose—the article sold being the subject of commercial speculation, and the mode of assignment well adapted to facilitate the transfer of the title where the property is liable to be passed from hand to hand, we are inclined to think that, under these circumstances, the blank endorsement is sufficient to indicate the intention of the vendor to part with his title to the property and his right of possession therein. But it is insisted that the title to Mitchell was not complete, in as much as by his contract with Herrington & Co., he was to pay for only so much of the lumber as he should actually receive from McLean the agent. We do not adopt this view of the contract. We think that as between Herrington and Mitchell the delivery was complete, and the stipulation respecting the quantity to be paid for, was only in the nature of an agreement on the part of Herrington & Co. to make an abatement for such quantity as Mitchell should fail to receive.

We have thus far considered the right of possession sole-
ly with reference to the relation existing between the ven-
dor and vendee. The more difficult question however, is
the one growing out of the relation existing between the
vendee and the bailee, viz : the right of the former to main-
tain an action against the latter. Upon principle it would
seem, that to sustain the action, some *privity* of contract
ought to be established between the parties, and that the
mere transfer of the title to the vendee ought not to invest
him with the right to call the bailee to account; that to
establish such a *privity* there must be some assent or pro-
mise on the part of the bailee, either expressed or implied.
This is the doctrine of Bich, vs. Aldred (6 Mod. R. 216)
which is cited by Story in his work on Bailments (§103).—
To this doctrine however, he does not yield his entire as-
sent, but represents it as questionable. (Vide Story on Bail.
§282. Story's Eq. Ju. §1041.) In commenting upon the
case of Bich, vs. Aldred (Story on Bail. §282) he says—
"The other position is, that if A bails goods to C and after-
wards transfers his whole right in them to B, B cannot
maintain detinue for them against C, because the special
property that C acquires by the bailment is not thereby
transferred to B. This position also seems questionable.—
For if the bailment is a naked bailment, no special proper-
ty passes to C; and what difficulty can there be in A's trans-
ferring his property to a thing in the possession of his
agent or bailee? Even if a special property did pass to the
bailee by a simple bailment, yet the bailment and special
property would be determined by the sale, and due notice
thereof to the bailee ; and the bailor would by the sale,
transfer the general property. Nothing is more common
than a transfer by a principal of his property in goods in
the hands of his factor, and no one doubts that it is a valid
transfer, subject only to any lien which the factor may pos-

sess thereon.   So a transfer of goods while at sea in the possession of a master of a ship, is deemed a valid transfer; and if he refuses to deliver them upon a due demand and refusal, the vendee may maintain a suit against him for a recovery of them or their value.   There is great reason therefore to suspect the accuracy of the report in both respects."

The facts of this case relieves us from the necessity of any attempt to solve the doubt suggested by this eminent Jurist ; for it is universally admitted that if the bailee, either expressly or impliedly signify his assent to the transfer, he makes himself the bailee of the purchaser, and there is thereby such a *privity* established between the parties, as will be sufficient to sustain any action between them.   The evidence in this record clearly establishes the *assent* of Mc-Lean to the sale and transfer from Herrington & Co. to Mitchell.   The witness Herrington says—"McLean admitted to witness the whole amount of the lumber contained in the receipt to be in his possession, just before the sale to Mitchell, and promised witness to account to Mitchell for it, except two cargoes which had been sent to New Orleans, and agreed to deliver the remainder to Mitchell." Now considering that the witness Herrington, was one of the original owners of the lumber who had sold it to Michell, it is difficult to resist the conclusion, that this promise and agreement on the part of McLean, amounted to such an assent to the transfer, as did constitute him the bailee of Mitchell, the purchaser.   But to put the evidence of assent beyond all controversy, here we have the suit of McLean against Mitchell to recover the commissions and charges alledged to be due upon the very lumber so sold and transferred.   This proceeding of McLean operates as a complete *estoppel* upon him, and establishes the fact most conclusively, that he not only recognized the sale and transfer of lum-

ber, but that he *adopted* the contract and thereby became a party to the same. Under these circumstances we are of the opinion that there is a most perfect *privity* established between the parties, and such as removes any doubt as to the right of Mitchell to maintain an action for the recovery of the full amount of the lumber actually sold to him, by the original owners, and consequently that he ought to be permitted to *set off* against the recovery in this suit, any damage that he may have sustained, in consequence of the non-delivery to him of the amount of lumber that he may have been entitled to. If McLean can show that the alledged deficiency was the result of a mistake or error in the estimate of the lumber embraced in the original receipts, or that he had, previous to his knowledge and adoption of the sale to Mitchell, accounted to the original owners for any portion of the lumber, this he will be allowed to do by proper pleadings.

In this view of the case, we are of the opinion that the defendant ought to have been permitted to establish by proof, as he sought to do, the amount of the deficiencies in the several lots of lumber, and the value of the same, and that it was error to prohibit him from the attempt to do so.

Let the judgment be *reversed* and the cause be remanded to the Court below, with directions to grant a *new trial*, and with permission to the parties to amend their pleading.